**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**October 11, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **J.F., M.C.-2, and N.C.**

**No. 16-0392** (Barbour County 14-JA-10, 14-JA-11, & 14-JA-12)

**MEMORANDUM DECISION**

Petitioner Mother M.C.-1, by counsel Thomas B. Hoxie, appeals the Circuit Court of Barbour County's March 24, 2016, order that terminated her parental rights to J.F., M.C.-2, and N.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Karen Hill Johnson, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred in its termination of her parental rights upon a single incident caused by an adverse reaction to medication and without the imposition of a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2014, the DHHR filed an abuse and neglect petition against the parents that alleged petitioner attempted to kill herself and wrote the word "die" in her blood on the washer and dryer, all in the children's presence. The petition further alleged that petitioner physically and emotionally abused the children. Specifically, the DHHR alleged that petitioner kicked M.C. in the head and body; hit J.F. with a stick and caused bleeding; and told N.C. on her birthday that petitioner was "not [her] mommy anymore so no birthday cake." According to the DHHR, petitioner had a history of mental illness and past failure to comply with treatment, in addition to a criminal history that included an arrest for terroristic threats.

After a preliminary hearing in March of 2014, the circuit court held an adjudicatory hearing in September of 2014. The same day as the adjudicatory hearing, petitioner filed a

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because petitioner and one of the children share the same initials, the Court will refer to them as M.C.-1 and M.C.-2, respectively, throughout the memorandum decision.

written stipulation and admitted that she had a history of mental health issues that included a prior diagnosis of bipolar and/or borderline personality disorder. Petitioner also admitted that her mental health issues were left untreated from 2006 until the petition's filing and that her failure to maintain proper treatment adversely affected her ability to properly parent the children. In addition to these admissions, the circuit court made findings that petitioner subjected the children to a history of domestic violence that included the parents having hit them and having witnessed petitioner's violent acts. Following adjudication, the circuit court granted petitioner a post-adjudicatory improvement period. Thereafter, the parties developed a case plan that included a requirement for petitioner to complete psychiatric, psychological, and parenting assessments and comply with the recommendations thereof. Petitioner was also instructed to attend various services addressing her parenting.

After she completed her evaluations and services as required, the circuit court granted petitioner's motion for an extension of her improvement period in March of 2015. Thereafter, the circuit court granted petitioner's motion for an improvement period as disposition in June of 2015. Eventually, the circuit court granted petitioner unsupervised overnight visits with the children in September of 2015. In November of 2015, petitioner had an unsupervised trial week of visits with the children. Following these successful visits, the circuit court returned the children to petitioner's care in December of 2015.

However, that same month, petitioner and her husband became intoxicated while the children were in their care. Petitioner and her husband engaged in domestic violence during which the husband threw petitioner to the ground, choked her, and punched her in the nose, which resulted in bleeding. Petitioner also threatened to commit suicide with a steak knife. Evidence established that the children witnessed portions of these events and that seven-year-old N.C. cleaned up her mother's blood. Moreover, testimony from law enforcement established that petitioner harmed herself with the knife during the altercation. Following this incident, the DHHR removed the children from petitioner's care and moved to terminate her parental rights.

In January of 2016, the circuit court held a dispositional hearing, during which petitioner failed to accept responsibility for her actions on the night of the domestic violence incident. Although she admitted to drinking alcohol, she blamed her actions on an adverse reaction to medication. During the hearing, petitioner's counselor recommended that petitioner have no unsupervised contact with the children. At the hearing's conclusion, the circuit court found that, despite extensive services, petitioner continued to abuse her children. The circuit court further found that termination of petitioner's parental rights served the children's best interests. As such, the circuit court terminated petitioner's parental rights to the children. It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a

reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's termination of petitioner's parental rights.

As to petitioner's assertion that the circuit court erred because it based termination solely on the December of 2015 incident that was caused by her adverse reaction to her medication, the Court finds no merit to this argument because it misstates both the evidence below and our prior holdings regarding termination of parental rights. Contrary to petitioner's assertion that the incident in question, in which petitioner engaged in domestic violence with her husband and threatened to kill herself with a knife in the children's presence, was caused by an adverse effect from medication, the record on appeal is devoid of any evidence in support of this argument. The only evidence on this issue introduced below was petitioner's testimony that she consumed alcohol in addition to her medication and her counselor's testimony that petitioner should not have mixed alcohol with her medication. As such, the record on appeal clearly shows that it was not an adverse reaction to the medication that caused the December of 2015 incident, but, instead, that petitioner's decision to abuse alcohol while taking the medication contributed to petitioner's continued abuse of the children.

In addressing issues of abuse and neglect, we have previously held that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). While it is true that petitioner stipulated to abusing the children at adjudication, it is clear that petitioner failed to fully acknowledge her continued abuse, as evidenced by her attempt to blame her actions on an adverse reaction to medication despite a lack of medical evidence to support such a claim. In short, petitioner's failure to acknowledge her continued abuse of the children at disposition evidenced the fact that the issues of abuse and neglect in this matter are untreatable.

Moreover, petitioner's argument that the circuit court terminated her parental rights upon one single incident mischaracterizes the record on appeal. To the contrary, the circuit court in this matter based termination of petitioner's parental rights upon the protracted history of

domestic violence in the home and petitioner's violent acts in the children's presence, which culminated in a final act of domestic violence, self-harm, and threats of suicide. The record on appeal is clear that the circuit court's basis for termination was the entirety of petitioner's history with the children, not the lone incident in December of 2015. In fact, in reaching termination of petitioner's parental rights, the circuit court specifically noted the striking similarities between the incident that precipitated the petition's filing and the final incident before disposition. In regard to these two incidents, the circuit court found that "it appears that the case has really come in a complete circle . . . ." As such, we find no error in the circuit court basing termination of petitioner's parental rights, in part, upon the incident of domestic violence in the home in December of 2015.

Finally, the Court finds no error in the circuit court declining to impose a less-restrictive dispositional alternative. While petitioner argues that the circuit court should have terminated only her custodial rights, the Court does not agree. In addressing a circuit court's termination of parental rights, we have held that "'[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened . . . .' Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)." Syl. Pt. 4, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). As noted above, petitioner's counselor testified that petitioner should not have unsupervised contact with the children. The therapist went on to testify that the children should not be exposed to potential harm in order to foster the bond between them and petitioner. Moreover, the circuit court specifically found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future due to the fact that petitioner underwent extensive services and failed to make sufficient improvement. As such, the circuit court found that the child's welfare necessitated termination of petitioner's parental rights. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon such findings. Accordingly, we find no error in the termination of petitioner's parental rights below.

For the foregoing reasons, we find no error in the circuit court's March 24, 2016, order, and we hereby affirm the same.

Affirmed.

**ISSUED**: October 11, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

4